IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM DOUGLAS RUSSELL, ) | Case No. 12-60190 |
| ) | |
| Debtor. ) | |

ORDER OVERRULING SECOND OBJECTION TO CLAIM NUMBER 2 OF
CREDITOR VINCE SIEMER ENTERPRISES, INC. (Doc. #101) ALLOWING
UNSECURED CLAIM IN THE AMOUNT OF $58,400.53
AND
OVERRULING OBJECTION TO CONFIRMATION OF PLAN FILED BY
VINCE SIEMER ENTERPRISES, INC. (Doc. #96)

Debtor William D. Russell objects to the proof of claim filed by Vince Siemer Enterprises, Inc. ("VSE"), asserting that VSE is not entitled to a deficiency claim following VSE's foreclosure of the Debtor's condominium. VSE also objects to confirmation of the Debtor's Chapter 13 Plan on the grounds that such Plan presumes VSE will not have an allowed claim. For the reasons that follow, the Objection to VSE's claim is OVERRULED, EXCEPT as to a reduction of $1,700 in the amount of the claim. The claim as allowed by this order will be treated in the Plan in the same manner as other unsecured claims. In light of the allowance of its claim, VSE's Objection to Confirmation of Plan is OVERRULED unless, within 14 days, it files a supplemental objection stating additional objections to confirmation.

In the early fall of 2010, Debtor William D. Russell made at least four visits to a ground-level condominium unit owned by VSE with an eye toward purchasing it as

the home he intended to live in upon his retirement. Janet Parsons of RE/MAX House of Brokers acted as VSE's agent in the sale and accompanied the Debtor on each of his visits to the condo. The Debtor testified that, based on a prior experience, he was very concerned about noise issues and inquired of Ms. Parsons on multiple occasions as to whether there were any noise problems in the building. Ms. Parsons represented to the Debtor that she was not aware of any such issues. The Debtor purchased the condo on September 30, 2010, for a price of $84,500. He paid $5,000 down, and VSE financed the balance. The Debtor executed a Promissory Note dated September 30, 2010, for $79,500, secured by a Deed of Trust against the condo.

The Debtor testified that, although he was otherwise very happy with the condo, the noise from his neighbors' condos, particularly from the unit above him, became intolerable almost immediately after he moved in. He contacted Ms. Parsons about the problem, who reported it to VSE's principal, Vince Siemer. At their suggestion, the Debtor obtained an estimate from a contractor to attempt to reduce the noise from the upstairs unit. That bid was for $10,921. Mr. Siemer agreed to pay $5,000 of that amount, which would be taken off the mortgage. The parties continued to discuss a possible resolution to the problem over the next few weeks, but, ultimately, the Debtor was not satisfied with any of the proposals because the contractor could not guarantee that the soundproofing would be completely successful, given the age of the building.

2

The Debtor testified that the noise problems were adversely affecting his health and career, and so he moved out in early January 2011. He had made two payments prior to moving out, and made no payments after that.

On April 15, 2011, VSE conducted a foreclosure sale and purchased the condo for a credit bid of $30,000. Shortly thereafter, on April 29, 2011, VSE filed a lawsuit against the Debtor in the Greene County Circuit Court for a judgment on the deficiency. As a defense, the Debtor asserted that, *inter alia*, he had "reasons to doubt reasonable efforts were made [to mitigate damages], including but not limited to the fact that the property, originally sold to [the Debtor] for $85,000, has purportedly now been sold for $30,000." He also raised the noise problem and asserted that VSE had committed fraud with regard to the habitability of the property.

Meanwhile, VSE says that it had to make repairs to the property and replace missing appliances, but then sold the condo to the owner of the upstairs unit on September 9, 2011, for $65,000.

While the state court deficiency action was pending, the Debtor filed this Chapter 13 bankruptcy petition on February 10, 2012. VSE filed a proof of claim asserting an unsecured claim for $60,100.53, representing the deficiency resulting from the foreclosure and a few other items. In objecting to the claim, the Debtor asserts that VSE is not entitled to any deficiency claim because, in essence, the

3

property was uninhabitable due to the noise problems, and that Ms. Parsons made misrepresentations to him when he inquired about noise issues on his several viewings of the property.

At the conclusion of an evidentiary hearing held on April 11, 2013, I held that VSE is entitled to a deficiency claim. To supplement the findings and conclusions made at the hearing, § 502(a) of the Bankruptcy Code provides that a properly-filed proof of claim is deemed allowed, unless a party in interest objects.[1] Section 502(b) provides that, if an objection is made to a proof of claim, then the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claims fall within one of the enumerated conditions for disallowance of the claim.[2]

> Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly executed proof of claim is prima facie evidence of the validity and amount of the claim. A party in interest may, however, file a written objection to a proof of claim. If an objection to a claim is supported by sufficient evidence to rebut the presumption, the burden of proving the

---

[1] 11 U.S.C. § 502(a).

[2] 11 U.S.C. § 502(b). *See also In re Dove-Nation*, 318 B.R. 147, 150 (B.A.P. 8th Cir. 2004) ("A claim, proof of which is filed pursuant to Section 501 of the Bankruptcy Code, is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an objection to a claim is filed, the court shall determine the amount of such claim as of the date of the bankruptcy petition and shall allow such claim in such amount except to the extent that any of nine enumerated exceptions apply. 11 U.S.C. § 502(b)(1)–(9). Section 502(b) sets forth the sole grounds for objecting to a claim and directs the court to allow the claim unless one of the exceptions applies.").

4

validity and amount of the claim shifts back to the claimant. In other words, once sufficient evidence is offered to rebut the prima facie validity of a proof of claim, the respective parties have the same burden of proof they would have under non-bankruptcy law.[3]

In Missouri, representations regarding real property must generally be made in writing.[4] The Real Estate Contract between VSE and the Debtor provided that "[t]his Contract and all attachments hereto constitute the entire Agreement between the parties and there are no representations, warranties, or understandings, written or oral, except as set forth herein, relating to the subject matter of this Contract . . . ."[5] The Contract also provided that "Buyer acknowledges and agrees that the Property is being sold in its existing condition and that neither the Seller nor any person acting on behalf of the Seller have made any representations or warranties, written or oral, relating to the Seller or the Property, upon which Buyer is relying in purchasing the Property, other than the following . . . ."[6] Even though the Debtor testified that he was particularly sensitive to noise issues because of a previous experience, and asked

---

[3] *In re Revelle*, 256 B.R. 905, 910 (Bankr. W.D. Mo. 2001) (*citing Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Brown v. Internal Revenue Service (In re Brown)*, 82 F.3d 801, 804 (8th Cir. 1996); *In re Interco Inc.*, 211 B.R. 667, 677 (Bankr. E. D. Mo. 1997); *In re Hydorn*, 94 B.R. 608, 612 (Bankr. W.D. Mo. 1988); Fed. R. Bankr. P. 3001(f) and 3007).

[4] *See* Mo. Rev. Stat. § 432.010 (Missouri's Statute of Frauds).

[5] VSE's Exhibit 3 at ¶19.

about the issue several times, he did not request that a representation or warranty regarding noise be included in the space that followed that provision, or anywhere else in any of the writings.[7]

In addition, as is acknowledged in the Seller's Disclosure Statement here,[8] Missouri law generally requires only that the seller or the seller's agent inform the buyer of any *known* material defects in the property.[9] The only evidence that VSE or any of its agents knew of the noise problem was an affidavit from Vince Siemer, admitted without objection, stating that he had slept many nights in the condo when he was in Springfield before it was sold to the Debtor, that he "knew from personal experience that someone walking across these floors [in the upstairs unit] with hard shoes could be heard below," but that "[o]ther than being able to hear someone heavy-stepping across the floor, I had not experienced any of the noise problems Mr. Russell

---

6 *Id.* at ¶ 12.

7 VSE's Exhibit 15.

8 VSE's Exhibit 9 (""[U]nder Missouri case law, a seller or real estate [agent] who has knowledge of facts about the property that materially and adversely affect its value has a duty to disclose those defects to a buyer who cannot discover the defects in exercise of due care or reasonable diligence.").

9 *See* 6 *Mo. Prac., Legal Forms* § 1.3 (2012) ("Missouri law generally requires that the seller or the seller's agent inform they buyer of any known material defects in the property.") (citing *Osterberger v. Hites Constr. Co.*, 599 S.W.2d 221, 227 (Mo. Ct. App. 1980)).

was purporting to have."[10] As I stated at the hearing, hearing heavy footsteps from an upstairs unit are to be expected when one buys a lower-level unit in a multi-unit building. If the noise was as bad as the Debtor says it was, there was simply no evidence that VSE or any of its agents knew about that purported defect.

As a result, and as I held at the hearing, the Debtor failed to prove that VSE is not entitled to a deficiency claim under Missouri law because a soundproof quality was not made part of the written contract and because there was no evidence that VSE or its agents made a knowing misrepresentation. The question remaining at the conclusion of the hearing was the amount of VSE's deficiency claim, which I took under advisement and on which the parties have now filed briefs.

In the recent case of *First Bank v. Fischer & Frichtel, Inc.*,[11] the Missouri Supreme Court accepted transfer of a case from the Missouri Court of Appeals to consider the manner in which foreclosure deficiencies are determined in Missouri. The Supreme Court acknowledged two general approaches to reviewing the sufficiency of a creditor's bid at a foreclosure sale.[12] One approach, recommended by

---

10  VSE's Exhibit 16 at ¶¶ 9 and 10.

11  364 S.W.3d 216 (Mo. banc 2012)

12  *Id.* at 219.

the *Restatement* (*Third*) *of Property*,[13] is that regardless of the price bid at the foreclosure sale, the obligor thereafter is only responsible for the difference between the debt and the fair market value of the property at the time of the foreclosure.[14]

The second approach, which is the long-standing approach in Missouri, is the common law approach, which requires the debtor to pay as a deficiency the full difference between the debt and the foreclosure sale price.[15] In *First Bank*, the Missouri Court of Appeals had acknowledged that the common law approach of using the foreclosure sale price to set the deficiency is well-established in Missouri, but concluded that transfer of the case would enable the Missouri Supreme Court to reexamine the law in light of the Restatement, as adopted in a number of other states.[16]

The obligor in *First Bank* urged the Missouri Supreme Court to adopt the Restatement approach. Although Chief Justice Richard B. Teitelman dissented -- concluding that the Missouri Supreme Court should adopt the Restatement approach in part because the common law rule was inconsistent with the underlying purpose of

---

13 *Restatement (Third) of Property* § 8.4 (1997).

14 *First Bank*, 364 S.W.3d at 219-220.

15 *Id.* at 220.

16 *See M & I Marshall & Ilsley Bank v. Sunrise Farms Dev., LLC*, 2012 WL 2522671 at *7 (W.D. Mo. June 28, 2012) (citing *First Bank v. Fischer & Frichtel, Inc.*, 2011 WL 3558118 (Mo. Ct. App. Aug. 9, 2011) (not reported)).

awarding damages[17] -- the Missouri Supreme Court declined the obligor's invitation to change the law. As summarized by the Honorable Brian C. Wimes of this District, the holding of *First Bank*, and thus the current status of Missouri law, is as follows:

> Under existing Missouri law, the issue of fair market value is not relevant to the calculation of the deficiency amount owed. *See First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 220–21 (Mo. banc 2012). The debt owed is calculated by subtracting from the debt the foreclosure sale price, not the fair market value of the real property being sold. *Id.* at 220. Under this approach, a debtor may not "attack the sufficiency of the foreclosure sale price *as part of the deficiency proceeding* even if the debtor believes that the foreclosure sale price was inadequate." *Id.* (emphasis in original). "A debtor who believes that the foreclosure sale price was inadequate can bring an action to void the foreclosure sale itself." *Id.* (citation omitted).[18]

As Judge Wimes states, while the Supreme Court declined to adopt the Restatement approach in setting a deficiency amount, it did acknowledge that, under certain conditions discussed more fully below, a foreclosure sale can be voided if the obligor requests that relief.[19] In such a case, "[a]s long as the sale stands, the sum for which the property sold has been held conclusive for the purpose of determining the

---

17 *First Bank*, 364 S.W.3d at 226 (Teitelman, C.J., dissenting).

18 *LNV Corp. v. Robb*, 2013 WL 1289862 (W.D. Mo. March 27, 2013) (slip copy)

19 *First Bank*, 364 S.W.3d at 220 ("This does not mean Missouri does not give a debtor a mechanism for attacking an inadequate foreclosure sale price. Rather, a debtor who believes that the foreclosure sale price was inadequate can bring an action to void the *foreclosure sale* itself.") (emphasis in original). *See also Frontenac Bank v. T.R. Hughes, Inc.* ___ S.W.3d ___, 2012 WL 4486312 at *3 (Mo. Ct. App. Sept. 25, 2012) (holding that, under *First Bank*, because the defendants did not attempt to void the foreclosure sales themselves, *at the time of the sales*,

amount of deficiency," but "[w]here fraud or unfair dealing surrounds the sale the proper course of action is to set aside the sale in equity."[20] If the obligor is successful in such an action, then typically the sale is set aside, the property is returned to the obligor, the trustee's deed is voided, and the deed of trust is reinstated.[21]

In order to prevail in an action to set aside the foreclosure, an obligor is required to show that the sale price, alone or in combination with other factors, was so inadequate as to raise an inference of fraud.[22] As the Missouri Supreme Court pointed out in *First Bank*, however, Missouri employs a "shock the conscience" standard which is among the strictest in the country: "[M]ore than one Missouri case has refused to set aside a sale that was only 20 to 30 percent of the fair market value because of Missouri's historical practice of requiring an inference of fraud in addition

---

or allege fraud in the sales, the deficiency would be based on the price bid).

20 *Lindell Trust Co. v. Lieberman*, 825 S.W.2d 358, 360 (Mo. Ct. App. 1992). *See also Boatmen's Bank of Jefferson County v. Community Interiors, Inc.*, 721 S.W.2d 72 (Mo. Ct. App. E.D. 1986) ("When fraud or unfair dealing surrounds a foreclosure sale, the remedy is to set aside the sale.").

21 *See, e.g.*, *West v. Axtell*, 17 S.W. 2d 328 (Mo. 1929) (ordering the trial court on remand to enter judgment setting aside an improperly conducted foreclosure sale, setting aside the trustee's deed, return of the funds paid by the buyer, reinstating the deed of trust, and further ordering that the deed of trust be foreclosed in the manner prescribed by law in satisfaction of the amount of the debt).

22 *First Bank*, 364 S.W.3d at 217.

10

to a sale price that 'shocks the conscience.'"[23]

There is no evidence that the Debtor requested the state court to set aside the foreclosure sale, nor does he do so here. Even if the Debtor had asked that the sale be set aside, however, he has not alleged any inference of fraud in connection with the sale other than the bid price, and the $30,000 bid price was forty-six percent of the $65,000 price paid for the property five months after the foreclosure, which does not meet Missouri's strict standard for voiding the sale. Moreover, an action to set aside a foreclosure sale is an equitable one. Since the Debtor did not promptly ask the state court to set aside the foreclosure or enjoin VSE from re-selling the property, VSE sold the property to a bona fide purchaser five months after the foreclosure, and that party would also have rights which would need to be considered in an equitable action to set aside the sale.[24] There being no evidence that the subsequent purchaser colluded with VSE, this Court would not set aside the sale at this point, even if the Debtor had asked for that relief.

Instead, in this claims allowance process, what the Debtor is asking this Court to do is apply the Restatement's fair market approach to calculate the deficiency. The

---

23 *Id*. at 221 (citations omitted).

24 VSE filed the deficiency action on April 29, 2011. The state court's docket sheet, attached to the Debtor's brief, shows that the Circuit Court entered a default judgment against the Debtor for failing to respond to discovery requests, and that that judgment was later set aside

Debtor here concedes that Missouri has traditionally followed the common law approach and that the Missouri Supreme Court expressly declined to adopt the Restatement approach in *First Bank* under the facts of that case. Nevertheless, he asserts that the deficiency here should be reduced by $35,000 to reflect the fair market value of the property as established by VSE's subsequent sale in September 2011, and that the Missouri Supreme Court's ruling In *First Bank* is not a bar to using fair market value in appropriate cases.

In support of his position, the Debtor points to *M & I Marshall & Ilsley Bank v. Sunrise Farms Development, LLC*.[25] In that case, the Honorable Scott O. Wright of this District acknowledged that the Missouri Supreme Court upheld the common law approach in *First State*, but read the decision to say that the Missouri Supreme Court would, if presented with the right case, adopt the Restatement approach for valuing deficiencies. That being the case, Judge Wright concluded he was not required to follow the common law approach and, instead, invited the parties to submit evidence as to the fair market value of the foreclosed property in his case.[26] While, as Judge Wright said, the Missouri Supreme Court hinted that it might consider adopting the Restatement approach under the right factual circumstances, the Supreme Court has

---

at the debtor's request. Meanwhile, VSE had sold the property.

  25  2012 WL 2522671 (W.D. Mo. June 28, 2012).

not yet done so. I am, therefore, bound by the Supreme Court's interpretation of Missouri law.

VSE's proof of claim, filed in the amount of $60,100.53, includes an additional $1,700 for kitchen appliances which were allegedly removed from the property, but those appliances were part of the property sold to the Debtor and, therefore, were included within the sale price and promissory note. If VSE had to replace them in order to resell the property, that should have been factored into the deficiency bid, like the carpet replacement and other repairs apparently were.

ACCORDINGLY, the Debtor's Objection to Claim Number 2 filed by Vince Siemer Enterprises, Inc. is OVERRULED, except as to the $1,700 claim for appliances. Claim Number 2 is allowed as an unsecured claim in the amount of $58,400.53. Since the only stated basis for the Objection to Confirmation of Plan filed by Vince Siemer Enterprises, Inc., was that the Plan failed to treat its claim, such Objection to Confirmation is OVERRULED unless, within 14 days, Vince Siemer Enterprises, Inc. files a supplemental objection stating additional objections to confirmation.

IT IS SO ORDERED.

/s/ Arthur B. Federman

---

26  *Id*. at *8.

                                             Bankruptcy Judge

Date: 5/3/2013

Attorney for movant to serve parties not receiving electronic notice